# CARROLL,

## DECEMBER TERM, A. D. 1859.

### RUSSELL *v.* DYER.

It is a matter of course to order a case to be brought forward on the docket, where either party desires to be heard on any motion in respect to it.

A motion to amend may relate to some proceeding in the progress of a cause, and in such case it is, in its nature, interlocutory, and the discretion exercised by the court will not be revised, unless an exception is reserved by the judge.

But a motion or petition for an amendment may have no relation to the proceedings in any pending cause. It may be in the nature of a suit or action by one party against another, to obtain an order for the amendment of a record, where such amendment may affect the title of one or both the parties. In such case the order is in the nature of a judgment. Exceptions may be taken, as of right, to the decision, and the judgment revised by the court above. The order made is final, and the case will not be reheard, except upon the like grounds and in like cases as the ordinary judgments of the court.

An amendment of a levy having been made at one term, after notice and a full hearing of the parties, and no exception taken, a motion at a subsequent term to rescind the order and erase the amendment, upon a suggestion that they were made upon false testimony, will not be heard. In such case a new trial may be granted under the statute, where the facts will sustain the application.

THIS was a petition of Francis Russell, in the following form:

" CARROLL, SS.  *Court of Common Pleas,*
 May Term, 1859.

And now Francis Russell, of, &c., comes and respectfully represents that at the last November term of this court, Isaac Dyer, of, &c., entered his petition in this court,

Russell v. Dyer.

praying that the return of the officer, B. H. Chadbourne, upon certain executions on file in the clerk's office of this court, might be amended; and such proceedings were thereupon had at said term, that the said Chadbourne was allowed by this court to make, and did, among other things, make the following amendment upon an execution, which issued upon a judgment, recovered by said Dyer against one Daniel Burnham, in the then Court of Common Pleas for this county, at the May term of said court, A. D. 1848, for $4,878.17, damages and costs, to wit: 'Carroll ss. Court of Common Pleas, November term, '1858. By leave of the court, I hereby amend the fore-'going return by adding, at the end of the list of fees, the 'following item, namely, Paid chairman $3.25, making the 'whole charges of levying the foregoing execution $79.63, 'instead of $76.38, as appears by the above return. 'B. H. Chadbourne, deputy-sheriff at the time of the 'above named levy and set-off'; which execution had been previously levied upon land which the said Russell had purchased of the said Burnham, by a levy and set-off, which was, in fact, illegal and void, and which amendment was and is entirely without foundation in fact, and wholly false, and procured to be allowed by this court by false testimony, and designed to make valid and legal the illegal and void levy aforesaid, and not authorized by the order of the court, whereby the rights and interests of the said Russell, and his title to the land aforesaid, being the Rosebrook farm, in Carroll, in our county of Coös, and to other real estate, are materially affected and endangered; wherefore the said Russell prays that the said petition, of the said Dyer, may now be brought forward and reconsidered by this honorable court, and that the order allowing said amendment to be made may be rescinded, and said amendment rejected and overruled; and as, in duty bound, will ever pray.

FRANCIS RUSSELL,

By his attorneys, FLINT & BRYANT."

Notice had been served upon said Dyer that this petition would be entered at the present term, and he appeared in court, by his attorney, F. R. Chase, Esq., and objected to the petition being entertained by this court, on the ground that the whole subject matter was *res judicata*, and that this court has now no jurisdiction of the subject matter, and moved that the petition be dismissed, which motion was overruled, and the court entertained the petition of said Russell, and ordered the said petition of the said Dyer to be brought forward for further consideration by this court, to which ruling the said Dyer excepted, and filed this bill of exceptions, which is allowed by the court.

*Flint & Bryant,* and *W. H. Bartlett,* for the petitioner.

*F. O. J. Smith,* of Maine, and *Benton & Ray,* for the petitionee.

BELL, C. J.* By our practice every case pending in the court should be entered on the docket, and all orders made in it should be minuted under that entry. If, then, from any cause a case has been left off the docket, and any order respecting it is desired by either party, the regular course is to move, first, that the case may be brought forward on the docket. An order for that purpose is a matter of course, and, as it decides nothing but that the court are ready to hear the party, it is not debatable. The case being, then, properly before the court, any order may be made that is proper. The order of the court upon this point is open to no objection.

No doubt can be entertained of the power of the court to amend its own records. *Chamberlaine* v. *Crane,* 4 N. H. 115; *Wendell* v. *Mugridge,* 19 N. H. 109; *Carleton* v. *Patterson,* 29 N. H. 580. This power extends to the amend-

*BELLOWS, J., did not sit.

Russell v. Dyer.

ment of extents or levies made upon real estate. *Whittier* v. *Varney*, 10 N. H. 291; *Baker* v. *Davis*, 19 N. H. 336; *Baker* v. *Davis*, 22 N. H. 27.

The method of proceeding to obtain such an amendment, is by a motion or petition to the court, setting forth the error and the amendment desired, upon which notice is ordered to parties adversely interested. An amendment will be held inoperative as to all persons who have not been notified. *Remick* v. *Butterfield*, 31 N. H. 70.

The proceedings in this case were regular, and no objection is made on that account. It is not contended that there was any error in the proceedings; but the ground of the application now is, that the amendment, though properly made upon the evidence before the court, was founded upon false evidence.

Amendments are obviously of two classes, the same into which we ordinarily classify judgments—interlocutory and final. The orders and judgments which are made during the progress of a cause, which regulate the due course of the proceedings in it, are interlocutory; those which adjudicate and decide the rights of the parties which constitute the subject of the litigation, are final. The former may often be properly denominated discretionary, because much must depend upon the good judgment of the judge, who has all the circumstances of the case before him. They must generally be decided at once, that the course of the trial may not be interrupted, and they do not ordinarily admit of revision, because the superior tribunal can rarely place itself in the position of the court making the decision, nor be put in possession of all the facts by which its judgment is influenced. It is to orders and judgments of this class, we think, that the decisions properly apply that amendments are discretionary, and will not ordinarily be revised by a superior tribunal. *Bassett* v. *Salisbury Manf. Co.*, 28 N. H. 452. It is only in a very qualified sense, if at all, that they apply to a judgment or decision

in a case where the amendment is not a mere interlocutory matter, arising in the progress of a cause and relating to the course of the proceedings in it, but where it is the end and object of the case.

The court cannot avoid seeing that this proceeding, for the amendment of a sheriff's return, is an action commenced by one party against another to obtain an order, decree or judgment, which may seriously affect the rights of one or both the parties, and may be permanently binding upon both.

It is said the decision in such a case is not a judgment, and, in the most familiar sense of that term, it is true. We speak usually of a judgment in a civil action at common law, of a sentence in a criminal proceeding, and of a decree in a court of equity or probate. But, in the more general sense, we speak of all these as judgments, as we do also of every other decision pronounced by any tribunal or officer appointed by the law, who is authorized to call parties before him, to hear their pleas and evidence, and to pronounce a decision by which their rights will be bound. It is not important what is the character of the tribunal, or the form of its process or of its judgment. Every such decision has the force of *res judicata* until it is reversed or set aside, by some proceeding specially designed for that purpose.

The reformation of deeds and contracts in equity, that is, the correction of mistakes made by parties or their scriveners in written instruments, is a familiar branch of the equitable jurisdiction of courts, and it bears a close resemblance to the proceedings here in question. The decree in that case, as the decision in this, is, that the writing be reformed or amended in certain particulars, and on that decree, the relief afforded by the court essentially depends; for, though the court will decree proper releases and other instruments, to carry into effect their determination, and issue injunctions to restrain parties from setting

up the incorrect instrument, still the decree would be generally effectual without them.

If, now, we suppose a decree made for the correction of a deed, its effect is to conclude the parties, as to the subject matter of the decision, forever. Yet, in that case, as in this, it is but the amendment of a writing, by making it what it ought to have been, according to the intention of the parties. It is contended here that the power of the court to amend its own records is a continuing power, and that, though once amended, they still remain the records of the court, and liable still to be amended if proper cause is shown, and so on, indefinitely. And this is equally true, so far as the powers of the court are concerned, as it regards the correction of deeds. The court has jurisdiction to reform deeds whenever they are shown to be wrong, but that is not the question. The effect of a judgment is to bind, not the court, but the parties. And we think that the parties are so bound, as well by the decision in this case as by the decree in equity in the other. After a decree amending a deed, a dissatisfied party would not be allowed to come in at the next term and ask a new trial, because the decree was made upon mistaken or perjured evidence. *Claggett* v. *Simes*, 25 N. H. 492.

As the amendment in this case is not interlocutory, so, we think, the judgment is not discretionary, in that sense that the Superior Court will not interfere with or revise the decision; and we are aware of no principle which forbids exceptions to be taken, as a matter of right, which may lay the foundation in a proper case for a writ of error, or may render a transfer of any questions of law, arising at the hearing to the law terms, proper.

It has been ingeniously argued that the original petition here sought no order, decree or judgment, against any party, but merely asked the court to allow an amendment, or to exercise its own powers, not upon rights of parties, but its own records; that though rights may be incident-

ally affected, there was no judgment upon those rights, and the court, through its proper officers, only amends its own records, because of its duty to make them conform to the facts. But the court, as such, feels no interest in this question. If parties are satisfied, the court presumes the records are right. They have a general superintendence over the records, but it is not their duty to make them, or certify or revise them, even in cases where they contain the record of their own orders and decisions, much less where they are records of the court only because they are required to be returned and filed among the records of the proper proceedings of the court itself, and which are, in fact, the proceedings of other officers, acting by virtue of their own official powers, and upon their own responsibility.

It is contended that, as the Court of Common Pleas have power by statute to grant new trials, the petition sets out a sufficient cause, and, in effect, asks for such new trial. But, we think, the power given by the statute of 1855 (ch. 1659, sec. 24) extended no further than the ordinary power of courts of law to grant new trials upon motion, which does not exist in any case where a final judgment has been rendered in due course. It was not intended to give to the Court of Common Pleas the power to grant a new trial where judgment has been rendered by reason of any accident, mistake or misfortune. Applications to the Supreme Court on that ground are limited to three years, but there is no' limitation upon the power of the Court of Common Pleas.

The conclusion, then, to which we arrive, is, that the Court of Common Pleas, after deciding on a motion and hearing that an amendment is proper to be made, and no exceptions then taken to their decision, cannot, at a subsequent term, re-try the same question upon the same or different evidence, whether the case is continued for some incidental purpose or is brought forward for that express

object. The judgment so rendered is, in its nature, a final judgment, and concludes all parties and privies so long as it remains unreversed.

It is not intended by this decision to lay down the rule that a party is necessarily without redress in a case such as that set up by the petitioner. He may have his remedy by a petition to the Supreme Judicial Court for a new trial, if he can bring his case within the terms of the statute relating to reviews.

It is one of the most usual things to impute perjury to witnesses, and to attempt to impeach them on the ground that their evidence is inconsistent or false. In a case, therefore, where the whole matter is before the parties, and they have had an opportunity to try fairly all questions relating to the veracity of witnesses, it would not be a good cause for a new trial upon petition, that the decision was rendered upon perjured evidence; *Demeritt* v. *Lyford*, 27 N. H. 541; though it might be so where the introduction of such evidence operated as a surprise upon the other party.

The Supreme Judicial Court may grant a review in any case where it shall appear that justice has not been done, through any accident, mistake or misfortune, and that a further hearing would be just and equitable; and we think this power extends to any case, and to any legal proceeding whatever. To hold that a rehearing may be allowed in such a case, does not impair the force due to a decision of the court, but leaves the decision, in a case of this kind, to stand upon the same footing as other judgments in similar circumstances. It excludes the absurd consequence which, it is suggested, must necessarily follow if the same court, after having allowed an amendment at one term, may, upon suggestion of fraud and perjury, re-try the case, and reverse the decision at a second hearing. In such event there could be no stopping-place; but upon the same

or similar ground the second decision may be reversed, and so on, indefinitely.

The judgment once rendered upon a hearing of all the parties and their evidence, in a case of this kind, will conclude parties and privies unless it is reversed, or reconsidered in the modes usual in other classes of proceedings. If the petitioner cannot show that injustice has been done him by reason of accident, mistake or misfortune, he stands only in the common case of one who has had a decision against him which public policy requires to be final.

The order of the court is, that the petition be dismissed, without prejudice.

*Petition dismissed.*