Kelly v. St. Paul Fire & Marine Ins.  CV-99-305-JD  03/21/00
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Christopher Kelly

    v.                                        Civil No. 99-305-JD
                                                 Opinion No. 2000 DNH 076
St. Paul Fire and
Marine Insurance Company


O R D E R


The plaintiff, Christopher Kelly, brings a declaratory judgment action seeking insurance coverage for his losses caused by an automobile accident when he was driving a rented automobile while on a business trip.  The defendant, Kelly's employer's insurer, St. Paul Fire and Marine Insurance Company, moved for summary judgment, contending that under its policy terms insurance coverage either did not exist or was excluded.  In response, Kelly pointed out that St. Paul was relying on the wrong policy and moved for summary judgment in his favor based on the applicable policy.  St. Paul now agrees with Kelly as to which policy was in force at the time of the accident, but objects to summary judgment in Kelly's favor based on that policy.[1]

---

[1]Although St. Paul has not moved for summary judgment based on the applicable policy, it apparently intends to maintain its arguments against coverage as if it had relied on the applicable policy.  While St. Paul would have been well-advised to

## Background

Christopher Kelly was employed by Neuman MicroTechnologies, Inc. as the Key Account Manager. The job required Kelly to travel to service company accounts. On April 21, 1998, while on a business trip, Kelly was driving a car rented from Avis Rent-A-Car in Ft. Lauderdale, Florida, and was hit by a bus. The bus was owned by Broward County Transit. Kelly was badly injured in the accident. Broward County Transit offered the policy limit of its coverage for the accident, which was $100,000.

At the time of the accident, St. Paul provided commercial automobile insurance to Neuman MicroTechnologies through policy number TE06901567. The policy provided uninsured motorist protection for "any owned auto." See forms 44462 and 44096. The St. Paul policy also provided automobile liability insurance. See form 44449. Kelly sought coverage for the accident under Neuman MicroTechnologies's uninsured motorist coverage from St. Paul. St. Paul denied coverage on the grounds that Kelly was driving a rented car at the time of the accident, when only "owned autos" are covered for uninsured motorist protection, and because the bus was not a covered uninsured vehicle.

---

explicitly move for summary judgment based upon the applicable policy, the court construes St. Paul's filings to include a motion for summary judgment based on that policy.

2

Kelly filed a petition for a declaratory judgment in Merrimack County Superior Court, challenging St. Paul's denial of coverage. St. Paul removed the case to this court. Both parties have moved for summary judgment.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The record evidence is taken in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). When parties file cross motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

3

## Discussion

St. Paul contends that its policy does not cover Kelly's accident because the policy does not provide uninsured motorist protection for accidents in rented cars. St. Paul also asserts that New Hampshire's uninsured motorist statute does not apply to out-of-state cars and that the policy's uninsured protection does not apply to government-owned or self-insured vehicles.[2] Kelly argues that the term "owned autos" in the uninsured motorist coverage section of the policy is ambiguous and should be construed to include the rented car involved in the accident. Kelly also argues that St. Paul's exclusion of government vehicles is void and that under New Hampshire law the uninsured motorist coverage should be construed to be the same as the liability coverage, which includes rented cars.

---

[2]The parties have not addressed the burden of proof in this declaratory judgment action, which was brought in state court and removed to this court. Under New Hampshire law, the party seeking coverage ordinarily bears the burden of proving the existence and validity of an insurance policy, except that in a declaratory judgment action subject to N.H. Rev. Stat. Ann. ("RSA") § 491:22-a, the burden falls on the insurer to refute coverage whether or not the insurer brought the action. See EnergyNorth Natural Gas, Inc. V. Associated Elec. & Gas Ins. Servs., Ltd., 21 F. Supp. 2d 89, 90-91 (D.N.H. 1998). It appears that § 491:22-a would apply to this case, despite Kelly's failure to invoke the burden-shifting statute. See State Farm Mutual Auto. Ins. Co. v. Cookinham, 135 N.H. 247, 249 (1992).

4

Under New Hampshire law, the court construes disputed terms in an insurance policy as a matter of law. See Calabraro v. Metropolitan Property & Casualty Ins. Co., 142 N.H. 308, 310 (1997). The court takes "the plain and ordinary meaning of the policy's words in context, and [] construe[s] the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." High Country Assocs. v. New Hampshire Ins. Co., 139 N.H. 39, 41 (1994). Disputed policy language is ambiguous if a reasonable interpretation would afford coverage. See id. The court will not, however, create an ambiguity in order to find coverage. See Calabraro, 142 N.H. at 310.

The auto coverage summary section in the St. Paul policy provides that uninsured motorist coverage applies to "any owned auto." Kelly apparently concedes that the plain meaning of "owned auto" does not include a rented car. Kelly contends, nevertheless, that the endorsement titled "Hired Autos Covered as Owned Autos Endorsement," form 44307, applies to uninsured motorist coverage and includes rented cars within the coverage.

The "Hired Autos" endorsement states that it changes the auto liability protection, but does not mention uninsured motorist coverage. The endorsement provides: "The autos that this endorsement applies to are shown in the Coverage Summary or

Auto Schedule.  They will be covered as if they are autos you own."  The coverage summary for auto liability protection includes "scheduled autos," "hired autos," and "non owned autos." The effect of the endorsement, then, is to increase the liability protection of the policy to cover all of the autos listed as covered for purposes of liability coverage as if they were owned autos.

Ignoring that the application of the endorsement is limited to auto liability protection, Kelly contends that because the endorsement makes hired cars covered as if they were owned, then the term "any owned autos" in the uninsured motorist coverage summary should also be construed to include hired autos.  Then, Kelly asserts, because "hired auto" is defined in the liability protection section to include a rented auto, his rented car should be construed to be an "owned auto" within the meaning of the uninsured motorist coverage summary.

Put simply, Kelly's interpretation is not reasonable.  There is no reason, based on the plain and ordinary meaning of the policy provisions, that the broadening definition in the "Hired Autos" endorsement for auto liability protection, which converts "hired autos" to "owned autos" for purposes of liability protection, would have the reverse effect when applied to the term "owned auto" used in the uninsured motorist coverage

6

summary. That is, nothing in the endorsement suggests that the term "any owned auto" in the uninsured motorist coverage summary was intended to include "hired autos." Instead, the coverage summary for uninsured protection very clearly limits coverage to "any owned auto." Since Kelly has not offered a different reasonable interpretation of the term, he has not shown that an ambiguity exists.

In the alternative, Kelly argues that even if the rented car were not covered under the uninsured motorist protection, he was protected under other terms of the policy. Kelly contends that the "Who Is Protected" provision in the "Commercial Auto Required Endorsement," form 44182, provides coverage for him, whether or not the car was covered by the policy. The "Who Is Protected" provision, however, also applies specifically and exclusively to the "Auto Liability Protection and Garage Liability Protection Agreements." There is nothing in the endorsement as a whole or in that particular provision to indicate that the "Who Is Protected" provision should be construed to apply to uninsured motorist coverage.

Kelly also argues that New Hampshire's uninsured motorist statute, RSA § 264:15, requires the policy to be construed to provide the same coverage for uninsured motorist protection that it provides for liability protection. Therefore, Kelly contends,

7

because the policy's liability coverage included rented cars, the uninsured motorist provision must also cover rented cars. St. Paul disputes Kelly's interpretation of the statute.

RSA § 264:15, I requires that "[t]he uninsured motorist coverage provided must meet the minimum statutory requirements for general liability coverage." Gisonni v. State Farm Mut. Auto. Ins. Co., 141 N.H. 518, 520 (1996). In addition, insurers must provide uninsured motorist coverage equal to the amount of liability coverage elected by their insureds. See id.; see also Wyatt v. Maryland Casualty Co., 738 A. 2d 949, 953 (N.H. 1999); Turner v. St. Paul Property & Liability Ins. Co., 141 N.H. 27, 29 (1996). The elective coverage provision applies exclusively to the monetary amount of insurance elected over the statutory minimum, but does not obligate the insurer to provide other elected enhancements in the liability coverage as part of the uninsured motorist coverage. See Gisonni, 141 N.H. at 520. By statute, an insurer must provide liability coverage "to the insured and any person responsible to him for the operation of the insured's motor vehicle, trailer, or semi-trailer who has obtained possession or control thereof with his express or implied consent" and "as a result of accidents which occur in New Hampshire" that involve insured persons driving any motor vehicle. RSA § 259:61, I & II.

8

Therefore, St. Paul was obligated to provide liability and uninsured motorist coverage to Newman MicroTechnologies for accidents involving cars it owned and for accidents in New Hampshire involving those defined as insureds in RSA § 259:61, II, without regard to ownership of the car. Although Newman MicroTechnologies elected additional liability coverage for "hired autos," that coverage is not statutorily mandated and is not applicable to the uninsured motorist coverage by operation of RSA § 264:15. As a result, Kelly's accident in Florida in a rented car does not fall within the statutorily mandated coverage.

Based on the plain meaning of the policy language applicable to uninsured motorist coverage, the policy provides uninsured motorist coverage for cars that Neuman MicroTechnologies owned and does not include rented cars. RSA § 264:15 does not broaden the uninsured motorist protection provided in the policy. Since it is undisputed that Newman MicroTechnologies did not own the car Kelly was driving at the time of the accident, the uninsured motorist provision does not cover Kelly's accident. St. Paul, therefore, is entitled to judgment in its favor. The court need not consider the parties' remaining arguments.

Conclusion

For the foregoing reasons, the plaintiff's motion for

summary judgment (document no. 7) is denied.  The defendant's motion for summary judgment (document no. 6) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

 

 

_____
Joseph A. DiClerico, Jr.
District Judge

March 21, 2000

cc:  Joseph J. Weglowski, Esquire
     Andrew D. Dunn, Esquire