Hillsborough
No. 91-032

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

### FAITH COOKINHAM

February 24, 1992

*Wiggin & Nourie,* of Manchester (*Doreen F. Connor* on the brief and orally), for the plaintiff.

*Nixon, Hall & Hess P.A.,* of Manchester (*Francis G. Murphy, Jr.,* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiff, State Farm Mutual Automobile Insurance Company, filed a petition for declaratory judgment to determine if the defendant, Faith Cookinham, was entitled to uninsured motorist benefits under a policy issued by the plaintiff to her friend, John J. Welch. The Superior Court (*Goode,* J.) ruled that the defendant was not "insured" under the uninsured motorist provision of Welch's policy because she was not "occupying" Welch's vehicle when she was struck and injured by an uninsured vehicle. On appeal, the defendant contends that she was "occupying" the insured vehicle. We agree and therefore reverse.

The parties filed an agreed statement of facts, and the case was submitted on the basis of the agreed statement of facts and the defendant's deposition. On May 3, 1986, the defendant and several of her friends left a Manchester nightclub and gathered around a nearby automobile, a "mint condition" 1977 Camaro, to examine it and engage in conversation. The vehicle was owned by Welch, who, according to the uncontroverted testimony of the defendant, had agreed to give the defendant a ride home after the group dispersed.

The defendant was leaning against the Camaro with her elbows and forearms on the back of the trunk throughout the conversation. When Welch suddenly noticed a vehicle approaching his car, he pushed the defendant off the trunk in an attempt to remove her from the path of the oncoming vehicle. Welch's efforts were ineffective. The defendant was struck by the vehicle, propelled over the Camaro, and seriously injured.

The vehicle that struck the defendant was owned by Robert McCallum and was not insured. Under Welch's insurance policy, however, the defendant would be entitled to uninsured motorist coverage if she was "occupying" the Camaro at the time of the accident. Welch's policy defines "occupying" as being "in or upon or entering into or alighting from" the insured vehicle.

In ruling upon the plaintiff insurance company's petition for declaratory judgment, the trial court ruled that the defendant "was not 'in,' nor 'upon,' nor 'entering,' nor 'alighting' from the insured vehicle." The trial court further ruled that the defendant was not entitled to coverage under the policy's terms because she was "pedestrian or sidewalk oriented," rather than "vehicle oriented" at the time of the accident. Applying the vehicle orientation standard, *see Nickerson v. Citizens Mut. Ins. Co.*, 393 Mich. 324, 328–31, 224 N.W.2d 896, 898–99 (1975) (vehicle orientation standard discussed), the court found that the defendant was not "occupying" the Camaro because she was not "engaged in a transaction essential to the use of the insured vehicle at the time" of the accident. We find that the trial court erred in ruling that the defendant was not "occupying" the Camaro at the time she was struck by the uninsured vehicle.

The interpretation of insurance policy language is ultimately an issue for this court. *Gagnon v. N.H. Ins. Co.*, 133 N.H. 70, 73, 573 A.2d 137, 139 (1990). RSA 491:22-a provides that where "coverage of a liability insurance policy [is at issue], the burden of proof concerning the coverage shall be upon the insurer . . . ."

In interpreting the policy, we first determine whether the language at issue is ambiguous. If it is not ambiguous, we will interpret it "as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." *Haley v. Allstate Ins. Co.*, 129 N.H. 512, 514, 529 A.2d 394, 396 (1987). If it is ambiguous, we will interpret it in favor of the insured and against the insurer. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 984 (1980). Ambiguity under *Trombly* "include[s] all terms about the meaning or application of which reasonable disagreement between the contracting parties is possible." *Smith v. Liberty Mut. Ins. Co.*, 130 N.H. 117, 122, 536 A.2d 164, 166 (1987).

The plaintiff argues that the vehicle orientation test applied by the trial court is consistent with the policy definition of "occupying." The vehicle orientation test requires that a claimant be engaged in an activity "essential to the use of the vehicle" when the accident occurs. Upon reviewing the authority cited by the plaintiff, we conclude that this interpretation of "occupying" is reasonable. Thus, we will find "occupying" to be ambiguous if another interpretation of the term is *also* reasonable, and "reasonable disagreement between the contracting parties is possible." *Id.*

The evidence clearly establishes that the defendant was leaning against the Welch vehicle immediately prior to the accident. The defendant argues that by leaning against the vehicle under the facts of this case, she was "occupying" it under the terms of the policy be-

cause she was "upon" the vehicle. In *Mondelli v. State Farm Mut. Auto. Ins. Co.,* 102 N.J. 167, 506 A.2d 728 (1986), a case interpreting an identical uninsured motorist provision, the claimant was struck by an uninsured vehicle while standing in the roadway with his arm resting upon the roof of his girlfriend's insured car. *Id.* at 171–72, 506 A.2d at 730. The New Jersey Supreme Court found that the claimant was "upon," and hence "occupying," the insured vehicle. More importantly, it rejected the lower court's determination that "'to occupy a vehicle, a person outside the vehicle must be there in connection with using it as a means of transportation.'" *Id.* at 171, 506 A.2d at 730 (quoting *Mondelli v. State Farm Mut. Auto. Ins. Co.,* 193 N.J. Super. 522, 526, 475 A.2d 76, 79 (1984)). The court explained:

> "'Many situations could arise where a person might be "upon" the vehicle lawfully, although not "immediately" using it or intending to use it for transportation, for example, repairing it, lashing baggage to the top of the vehicle even though it was not intended to be used that particular day or perhaps by that person as a means of transportation.'"

*Mondelli,* 102 N.J. at 172, 506 A.2d at 731 (quoting *Mondelli,* 193 N.J. Super. at 531–32, 475 A.2d at 82 (Petrella, J., concurring in part and dissenting in part)). The court then held that, instead of applying the "hard and fast" vehicle orientation rule, it would "leave the determination of whether the policy definition of 'occupying' is satisfied to a case-by-case analysis . . . ." *Id.*

 We hold that the term "occupying," which is defined by the term "upon," is ambiguous because "reasonable disagreement between the contracting parties is possible." *Smith,* 130 N.H. at 122, 536 A.2d at 166. The policy should thus be interpreted to find that the defendant is entitled to uninsured motorist coverage. *See Trombly,* 120 N.H at 769–72, 423 A.2d at 985.

 We additionally find that the claimant is entitled to uninsured motorist coverage because she was "upon" the Welch vehicle, and thus occupying it, since (1) she was physically resting upon the vehicle just prior to the accident and (2) it is uncontroverted that she intended to accept a ride home in the vehicle but for the accident. Thus, her relationship to the vehicle was not merely coincidental. *See Mondelli v. State Farm Mut. Auto Ins. Co. supra.*

*Reversed and remanded.*

All concurred.